IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NICHOLAS BENNETT,

           Plaintiff,

v.                                                                        OPINION and ORDER

SALAM SYED, BRITTANY WIERSMA,                     20-cv-861-jdp
BOBBIE BAILEY, NURSE KIM, and DANE COUNTY,

           Defendants.

---

Plaintiff Nicholas Bennett, appearing pro se, is currently a prisoner at Jackson Correctional Institution. Bennett alleges that when he was a prisoner at the Dane County Jail, medical staff delayed in giving him medical treatment after two incidents in which he slipped on the floor and fell.

Both sides have moved for summary judgment. In this order, I'll reset the briefing schedule on defendants' motions for summary judgment and I'll decide Bennett's motion on the merits.

Bennett filed his motion for summary judgment early in the case. Dkt. 62. The court granted defendant Dane County's motion to defer briefing on Bennett's motion for summary judgment until defendants filed their own motions for summary judgment. Dkt. 69. Both sets of defendants have now filed motions for summary judgment, Dkt. 90 (Dane County's motion) and Dkt. 100 (the individual defendants' motion), but briefing is not yet completed. The court extended Bennett's deadline to file a reply to his own motion to coincide with his deadline to respond to defendants' motions, Dkt. 107; the court later extended Bennett's deadline to file materials concerning both his and defendants' summary judgment motions, Dkt. 113; and Bennett now seeks yet another extension, Dkt. 122.

Bennett says that the prison is currently on a COVID-19 lockdown, ending in mid-February, that bars him from using the law library, and he asks for an extension until March 28, 2022. His submission doesn't persuade me that he needs that long to file a summary judgment response, given the extension that he has already received and the fact that the lockdown should be ending soon. I will extend his opposition deadline to March 9, 2022, with defendants' new reply date set to March 21, 2022.

Bennett's own motion for summary judgment is ready for a decision even though Bennett has not yet filed his reply. Defendants' response to Bennett's motion make clear that there are factual disputes that cannot be resolved on summary judgment, so I see no need to have Bennett spend his time preparing a reply.

Bennett brings the following claims:

- constitutional and state-law medical negligence claims against defendant nurses Brittany Wiersma, Bobbie Bailey, and "Nurse Kim" for failing to treat Bennett after a fall left him in excruciating pain

- constitutional and state-law medical negligence claims against defendant Dr. Salam Syed for delaying in providing him with an adequate ankle brace

- a negligence claim under a respondeat superior theory against defendant Dane County for jail staff's actions or inactions that produced the slippery floor conditions

PROPOSED FINDINGS OF FACT

I'll begin the discussion of the facts by addressing a problem with Bennett's summary judgment submissions. Bennett's proposed findings of fact in support of his motion are exceedingly brief and they do not comply with this court's procedures for briefing summary judgment motions, which this court included with its preliminary pretrial conference order. *See* attachment to Dkt. 39, at 2–6. Bennett presents only two numbered proposed findings

about the events at issue: each of those findings is actually a long paragraph containing numerous discrete statements, which violates the court's rule about each proposed finding being "limited as nearly as practical to a single factual proposition." *Id.* at 3. Aside from this problem, his account of the events remains vague and he does not cite specific evidence for each individual factual proposition he makes. *Id.* ("Each factual proposition must be followed by a reference to evidence supporting the proposed fact. The citation must identify where in the record the evidence is located."). Bennett's failure to follow this court's summary judgment procedures would be reason enough for me to deny his motion for summary judgment.

But even if I overlooked these problems and treated Bennett's unsworn and unsupported statements as proper proposed findings of fact, he would not be entitled to summary judgment: his vague account of events and defendants' more detailed accounts raise disputed issues of material fact that preclude me from entering judgment in his favor. What follows are the main facts as proposed by Bennett, and as the defendants have countered them with admissible evidence.

Bennett says that on July 4, 2020, he slipped on "debris" in a poorly-lit "sleeping area" and broke his ankle, but that he didn't receive medical care until nine days later, and that defendants also delayed in providing him crutches or a brace. Dkt. 64, at 2. He says that he slipped and fell again a few days later on a wet floor that had been mopped by an inmate worker, in part because he wasn't able to properly balance himself with aids like crutches or a brace. He says that he then didn't receive medical care for nine months, until he was transferred to the Grant County Jail.

Defendant Dane County says that it was reasonable for the site of Bennett's first fall to be dimly lit because it was "lights out time" overnight. They also note that Bennett concedes

3

that he did not actually see what he slipped on; only later did he return to the site of the incident and notice a granola bar wrapper on the floor that he now believes is debris that he slipped on. In any event, prison staff barred inmates from having granola bars in that area, so defendants argue that they did what they could to prevent an accident. As for his second fall, the county says that Bennett can only speculate that the floor was wet because an inmate had mopped it; Bennett says that there were mop marks on the floor but he didn't see an inmate mopping around the time of the incident. The county notes that Bennett does not provide any evidence showing that the accident was caused by any particular staff member's negligence, such as by failing to tell an inmate mopper to put wet-floor signs out.

As for Bennett's medical care claims, the individual defendants adduce evidence that non-defendant medical staff saw Bennett on July 4, 2020, within hours of his first fall, diagnosed him with an ankle sprain, and prescribed him Tylenol, ice, and range-of-motion exercises. Later the same day. Bennett reported that he fell again. A non-defendant nurse met with Bennett on July 6 and completed an examination using a "Musculoskeletal Nursing Documentation Pathway" form. The nurse noted swelling and discoloration in his ankle but stated that Bennett did not limp when he was unaware that he was being watched. The nurse provided him with more Tylenol but did not believe that further medical follow up was needed.

Nonetheless, defendant Dr. Syed saw Bennett two days later, the first day after the incidents that he was present at the jail. Syed diagnosed him with an ankle sprain, prescribed him ibuprofen, and initially ordered an ankle brace, but then rescinded that order after concluding that Bennett didn't need a brace and that the sprain should be treated with ibuprofen and elevation instead.

After Bennett continued to complain of pain, defendant Nurse Bailey saw him and reported that he had developed a hematoma on his foot; she called a non-defendant jail doctor, who ordered an x-ray by outside medical providers. The radiology report noted no fracture and concluded "Normal right foot." Dkt. 104-1, at 24.

Bennett continued to complain of pain. A nurse mistakenly gave Bennett an ankle brace despite Syed previously discontinuing an order for one. Bailey took it away from Bennett as unapproved. But she also obtained an order for Bennett to receive Naproxen to treat his pain and inflammation. Over the next seven months before his transfer to the Grant County Jail, staff, including defendants Syed and Bailey, continued to field complaints from Bennett, examine him, and prescribe him treatments, including a compression sleeve, various pain medications, warm compresses, and stretching routines and exercises. Bennett at times refused to take medication or see medical staff, declared himself "fine," and sought to take on a prison job. *Id.* at 69. After Bennett was transferred to the Grant County Jail, he received another x-ray that revealed "an age-indeterminate avulsion fracture." Dkt. 64-1, at 1.

## ANALYSIS

**A. Negligence claim against county**

Bennett brings a negligence claim against defendant Dane County under a respondeat superior theory. The county raises various defenses, including discretionary immunity and Bennett's alleged failure to comply with Wisconsin's notice-of-claim statute. I'll let Bennett respond to those arguments when he files his response to the county's motion for summary judgment. But even without those defenses, I will deny Bennett's motion for summary judgment on this claim.

Under Wisconsin law, a claim for negligence requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. Because I am considering Bennett's own motion for summary judgment, I must resolve any dispute of fact in the county's favor and draw all reasonable inference from the acts in the county's favor. Given these standards, Bennett's own sparse facts fall short of showing that the accidents were undisputedly caused by the negligence of jail officials.

Bennett attributes his accidents to negligence on the part of jail staff, who failed to prevent slippery floor conditions. But regarding the first fall, I agree with the county that a jury could draw the inference that it was reasonable for the sleeping area to be dimly lit. A jury also would not have to conclude that staff was negligent by allowing a granola-bar wrapper to be on the floor—Bennett cannot say for sure that he slipped on the wrapper and in any event staff disallowed inmates from having granola bars in the sleeping area. As for his second fall, defendants argue that Bennett can only speculate that the floor was wet because an inmate had mopped it. That's one reasonable inference from the facts, particularly given that Bennett says he saw "mop marks" on the floor. But given the scant record before it, that still doesn't mean that a jury would have to infer that the lack of wet-floor signs was attributable to negligence on the part of a county employee. For instance, Bennett does not provide any evidence showing staff member's responsibilities for supervising inmate cleaners. And the mere fact that Bennett slipped does not mean that a county employee was negligent. *Cf. Topp v. Continental Ins. Co.*, 83 Wis.2d 780, 788, 266 N.W.2d 397, 402 (1978) (safe-place statute not violated by mere fact of accident). Without a more robust—and undisputed—explanation of what jail staff

6

specifically did or failed to do that was negligent, I cannot grant summary judgment in Bennett's favor.

**B. Medical care claims against individual defendants**

Bennett brings constitutional and state-law medical negligence claims against the individual defendants for failing to properly treat his injuries. I previously stated that it was unclear precisely which constitutional standard Bennett's claims against the individual defendants fall under: the Eighth Amendment's "deliberate indifference" standard governs cases brought by prisoners while the Fourteenth Amendment's "objectively unreasonable" standard applies to cases brought by pretrial detainees. In their summary judgment materials, the individual defendants say that the Eighth Amendment should apply because Bennett was incarcerated at the jail as a convicted prisoner after violating the terms of his extended supervision on a previous felony conviction, citing Grant County Circuit Court Case No. 16CF145. But my review of Wisconsin's online court records for that case does not make clear that this what occurred: there are no entries indicating that Bennett was detained for violating his supervision or that his supervision was revoked.[1] For purposes of this opinion I will consider Bennett's constitutional claims under the Fourteenth Amendment "objectively unreasonable" standard that is easier for a plaintiff to meet. The parties should clarify and provide evidence of Bennett's status in their forthcoming briefing on defendants' motions for summary judgment.

Even under the more favorable Fourteenth Amendment standard, Bennett is not entitled to summary judgment on his constitutional claims, and for the same reasons he is not

---

[1] Available at http://wcca.wicourts.gov.

entitled to summary judgment on his medical negligence claims either. The individual defendants' detailed explanation of the history of care they gave him contradicts Bennett's vague assertions that he received no treatment immediately after his first fall and that he received no treatment for months after his second fall. Rather, defendants Syed and Bailey as well as non-defendant medical staff provided him with various treatments following the incidents. Even if what Bennett really means when he said he received "no" care is that he received inadequate care, a jury drawing reasonable inferences in defendants Syed's and Bailey's favor could conclude that they acted reasonably in addressing his complaints, particularly that they were operating under the assumption that he had suffered a sprain given his x-ray showing no fracture. And Bennett does not explain what defendant Brittany Wiersma or Nurse Kim did to violate his rights.

CONCLUSION

Bennett's motion for summary judgment is now resolved, but Bennett must still respond to defendants' motions for summary judgment. When he does so, he must follow this court's procedures for briefing summary judgment motions, which means that he should respond to each of defendants' proposed findings of fact *individually*; he should not respond with large paragraphs containing multiple factual propositions like he did with his proposed findings of fact here. The same rule applies if he files his own additional set of proposed finings. He must support each finding by referring to specific pieces of evidence, including the specific page or paragraph numbers he means to cite. And to successfully oppose defendants' motion for summary judgment, he will need to explain what each individual defendant did or failed to do that harmed him and explain what negligent actions or inactions by county employees caused

his accidents. I will direct the clerk of court to send Bennett another copy of this court's summary judgment procedures.

ORDER

IT IS ORDERED that:

1. Plaintiff Nicholas Bennett's motion for summary judgment, Dkt. 62, is DENIED.

2. Plaintiff's motion for an extension of time to file his materials opposing defendants' motions for summary judgment, Dkt. 122, is GRANTED in part: plaintiff's opposition deadline is now March 9, 2022. Defendants' new reply date is now March 21, 2022.

3. The clerk of court is directed to send plaintiff a copy of the attachments to the court's preliminary pretrial conference order, Dkt. 39, along with this order.

Entered February 11, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge