IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NICHOLAS BENNETT,

                Plaintiff,

v.                                                                    OPINION and ORDER

SALAM SYED, BRITTANY WIERSMA,                                         20-cv-861-jdp
BOBBIE BAILEY, NURSE KIM, and DANE COUNTY,

                Defendants.

---

Plaintiff Nicholas Bennett, appearing pro se, is currently a prisoner at Jackson Correctional Institution. Bennett alleges that when he was a prisoner at the Dane County Jail, medical staff delayed in giving him medical treatment after two incidents in which he slipped on the floor and fell. Months later, Bennett was diagnosed with an ankle fracture that he believes was caused by one of these falls. I granted Bennett leave to proceed on a Wisconsin-law negligence claim against Dane County for jail staff's actions or inactions that caused hazardous slippery floor conditions, and on constitutional and Wisconsin-law medical negligence claims against individual jail medical staffers for failing to properly treat his injury.

Both sides moved for summary judgment. I denied Bennett's motion for summary judgment before briefing was completed on defendants' motions. Dkt. 125. The parties have now completed briefing on the motions for summary judgment filed by both sets of defendants. Dkt. 90 (Dane County's motion) and Dkt. 100 (individual jail medical staff members' motion). I will grant defendants' motions and dismiss the case. Bennett's negligence claim against the county fails because he did not file a notice of claim about the events. I will grant summary judgment to the individual medical-provider defendants because Bennett fails to show that they acted unreasonably in treating what they deemed to be a mildly sprained ankle.

UNDISPUTED FACTS

The following facts are taken from the parties' proposed findings of fact and jail medical records and they are undisputed unless otherwise noted.

During the events material to this case, plaintiff Nicholas Bennett was imprisoned at the Dane County jail. The individual defendants worked as medical professionals at the jail: Salam Syed was a doctor there and Brittany Wiersma, Bobbie Bailey, and Nurse Kim were nurses.

This case concerns incidents in which Bennett slipped on the jail floor. The first of these incidents took place late at night on either July 3 or 4, 2020, when Bennett slipped on a granola-bar wrapper and injured his right ankle. Bennett states that this incident happened the night of July 4, but he does not dispute the jail medical records showing that at 5:44 a.m. on July 4 he filed a medical request about slipping on a wrapper "last night." Dkt. 104-1, at 1. Ultimately, it is immaterial whether this incident happened on July 3 or July 4.

A non-defendant nurse saw Bennett around 1:00 p.m. on July 4. That nurse examined Bennett's ankle and noticed it was "slightly swollen and bruised." *Id.* at 2. The on-call physician told her to provide Bennett with Tylenol for pain, ice for swelling, and range-of-motion exercises to prevent stiffness. The nurse also scheduled Bennett to be seen by a doctor. This treatment was consistent with what Nurse Bailey says is the standard treatment for symptoms indicating a mild sprain: pain medications, rest, and ice or NSAID medication to reduce swelling, with the patient later exercising and stretching to restore range of motion, strength, and flexibility.

Defendants provide another sick call request from Bennett from about 11:00 p.m. on July 4 stating that he fell again, this time on a wet floor. Bennett denies that there was a second fall on July 4.

On July 6, a non-defendant nurse examined Bennett. Bennett reported that his pain as at 8 out of 10. The nurse noted swelling and discoloration in his ankle but stated that Bennett did not limp when he was unaware that he was being watched. Bennett states that he limped at all times. The nurse provided him with more Tylenol (650 mg twice a day for two days). She also encouraged him to elevate his ankle. She did not believe that further medical follow up was needed.

On July 7, 2020, Bennett submitted a sick call request asking why he did not receive an x-ray: he stated, "How do we know I got only a [bruised] or twisted ankle . . . only a look at it for one sec no xray?" Dkt. 104-1, at 7. A non-defendant nurse responded that Bennett was on the list to see a physician, who would be the person to decide whether an x-ray was necessary. Later that day, Bennett slipped and fell on the floor, which was wet from being mopped. Neither side submits any evidence of Bennett making a medical request specifically about injuries from a July 7 fall.

Defendant Dr. Syed saw Bennett the next day, which was the first day since Bennett's July 3 injury that Syed was working at the jail. Because of COVID-19 protocols, Syed saw Bennett at his cell. I take the parties to be saying that Syed and Bennett were separated by glass, with Syed unable to touch Bennett's ankle. Syed assessed Bennett's ankle and concluded that there was no sign of acute distress, including "no edema, [range of motion] full, no redness or swelling." *Id.* at 10. Syed diagnosed him with an ankle sprain and prescribed him ibuprofen. Syed also initially ordered him an ankle brace, but he rescinded that order later that day, after

3

concluding that a brace was unnecessary because Bennett's ankle was not seriously swollen or discolored. Syed determined that Bennett should instead take ibuprofen and elevate his ankle. A contemporaneous request form that Bennett filled out inquiring about a brace shows that Syed discontinued the brace after finding out that the jail did not have a brace that fit Bennett.

Bennett submitted another sick call request on July 10, stating that pain was "shooting up [his leg]" and asking for an x-ray. *Id.* at 15. Nurse Bailey met with Bennett that day and told him to elevate his leg and take ibuprofen. She also told him that he was approved for a bottom bunk for his convenience. A non-defendant nurse saw Bennett later that day after being called by correctional staff. The nurse's note from that meeting stated that she believed that Bennett was trying to manipulate correctional staff by saying that he needed ice and an ankle brace, even though he was not currently prescribed those treatments. The nurse stated that Bennett needed to take his pain medication and rest and elevate his ankle.

On July 11, 2020, a different non-defendant nurse responded in writing to Bennett's sick call request from the previous day, stating that an x-ray was not needed based on defendant Syed's assessment. Bennett submitted another sick call request, stating that his pain was a 9 out of 10 and asking for "medical help." *Id.* at 19. A non-defendant nurse responded to this request the same day, stating that a doctor had already deemed an x-ray unnecessary, that he had "been educated many times that sprains take a long time to heal," and that he should rest and elevate his ankle and take ibuprofen as needed. *Id.*

Also on that day, Bennett made a request stating that a doctor told him that he could have a brace. A non-defendant nurse responded that the doctor had reconsidered that decision and that "placing more slips about this will not change that answer" and that he would be charged for additional requests. *Id.* at 18.

4

The next day Bennett submitted a request stating that he "need[s] ice swelling going up." *Id.* at 22. A note by a non-defendant staff member states that she "triaged" Bennett's request but there is no indication that he was physically examined right away. Defendant Nurse Bailey saw Bennett a day later. Bailey reported that he had developed a "1/2 dollar size hematoma" on his foot but she did not observe other edemas or swelling. *Id.* at 23. She called a non-defendant jail doctor, who ordered an x-ray as soon as possible. Bailey also reported that Bennett told her that Syed told him he didn't need a brace and that Syed initially gave him a brace only "to keep him quiet." *Id.*

At roughly the same time, a non-defendant staff member sent Bennett a written response to his health request, stating that an x-ray had been scheduled and that he should elevate his foot and take ibuprofen. She stated that "[i]ce and a brace are not considered appropriate interventions at this time." *Id.* at 22.

Later that day, outside medical providers x-rayed Bennett's ankle and foot. The radiologist interpreting the x-ray reported "no fracture, dislocation, or soft tissue swelling" and "normal right foot." *Id.* at 24.

A non-defendant jail physician reviewed the x-ray report the next day and relayed her orders to a non-defendant nurse, explaining that Bennett did not have a fracture but that he could have a compression brace (something different from an ankle brace) for comfort. The doctor stated that a compression brace would be sent over to Bennett on the "med cart." But this brace was too big to work for Bennett, so nurses did not give it to him. Bennett made multiple health requests stating that medical staff lied to him about the brace. Non-defendant nurses responded, stating that the brace they had did not fit right and that it was not necessary for a sprain but that it was prescribed only for his comfort and peace of mind. They told him

5

to continue resting his foot and taking his pain medications. They also sent him stretching instructions to avoid future sprains.

Nurse Bailey met with Bennett on July 16, 2020, to personally tell him that his "x-ray was fine and [he had] no decolorizations or fractures." *Id.* at 32.

The next day, a non-defendant nurse, relying on the discontinued order from defendant Syed, mistakenly gave Bennett an ankle brace and entered a note describing that it was "due to [Bennett's complaints of] inability to walk on foot despite being observed doing so." *Id.* at 33.

Nurse Bailey met with Bennett the next day, July 18, to conduct a physical exam of Bennett's right knee, based on his new complaints of knee pain. Bailey asked Bennett from where he had obtained the ankle brace; Bennett told her that he didn't know who had given it to him or when he got it. Bailey took the brace from Bennett under the jail contraband rules because Bennett did not have a medical order for it. Bailey examined Bennett's knee and received a telephone order from a non-defendant physician for naproxen for seven days.

Bennett continued to complain of pain. Over the next seven months before his transfer to the Grant County Jail, staff, including defendants Syed and Bailey, continued to field complaints from Bennett, examine him, and prescribe him treatments, including a compression sleeve when his swelling increased, various pain medications, warm compresses, and stretching routines and exercises. Bennett at times refused to take medication or see medical staff, declared himself "fine," and sought to take on a prison job. *Id.* at 69.

Bennett was transferred to the Grant County Jail in February 2011. In late April 2021, Bennett was taken to the Grant Regional Medical Center for x-rays of his ankle because of

continued pain and swelling. Dkt. 148-3, at 1.[1] The x-ray revealed "an age-indeterminate avulsion fracture." *Id.* Bennett believes that the fracture was caused by one of his falls at the Dane County Jail.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

A. **Negligence claim against county**

Bennett brings a negligence claim against defendant Dane County under a respondeat superior theory for jail employees failing to maintain safe conditions: he alleges that he fell on surfaces that were slippery or obstructed with garbage. One of the defenses raised by the county is Bennett's alleged failure to comply with Wisconsin's notice-of-claim statute for municipalities and their employees, Wis. Stat. § 893.80(1d). That statute says that "no action may be brought or maintained" against a county or county employee acting within the scope of his or her employment unless three things occur. First, the plaintiff must serve "written notice of the circumstances of the claim" within "120 days after the happening of the event giving rise to the claim." Wis. Stat. § 893.80(1d)(a). Second, the plaintiff must present a "claim containing the address of the claimant and an itemized statement of the relief sought" to "the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant."

---

[1] The original version of his medical record also stated that a reason for the appointment was "Sprain 1 month ago." Dkt. 64-1, at 1. Bennett says that the author of that document incorrectly stated that he had recently suffered a sprain, and he wrote to the medical provider to amend that record to remove the statement about a sprain, which the provider did. Bennett provides a copy of the amended medical record and he asks to amend the summary judgment record to reflect this change. Dkt. 148. I will grant Bennett's motion and I will consider the amended version of the record, but the amendment does not make a material difference in my decision.

Wis. Stat. § 893.80(1d)(b). Third, the claim must be disallowed. *Id.* Failure to comply with either § 893.80(1d)(a) or (1d)(b) requires dismissal of the claim. *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 301, 588 N.W.2d 19 (1999); *Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 530 N.W.2d 16 (Ct. App. 1995). Bennett now concedes that he did not serve Dane County with either a notice of claim or itemized statement of the relief sought, so I will dismiss the negligence claim against the county.

A final point about the claim against Dane County. After repeated submissions from Bennett requesting video footage from Dane County, at least some of which the county had previously sent to Bennett's prison, the court ordered defendants to submit that footage to the court. *See* Dkt. 150. The court doesn't need the footage to rule on defendants' summary judgment motions, but to perfect the record, I will still require the county to submit the footage it has. The county may have until May 26, 2022, to submit that footage.

**B. Medical care claims against individual defendants**

Bennett brings constitutional and state-law medical negligence claims against the defendant nurses for failing to treat him immediately after his falls, and against defendant Dr. Syed for delaying in providing him with an adequate ankle brace.

I previously stated that it was unclear precisely which constitutional standard Bennett's claims against the individual defendants fall under: the Eighth Amendment's "deliberate indifference" standard governs cases brought by prisoners while the Fourteenth Amendment's "objectively unreasonable" standard applies to cases brought by pretrial detainees. Bennett states that he was in jail on a probation hold at the time of the events in question, and defendants do not provide any evidence disputing that.

The Court of Appeals for the Seventh Circuit has not explicitly stated whether someone on a parole or probation hold qualifies as a pretrial detainee or a convicted prisoner. *See Taufner v. Doe*, No. 19-cv-1288, 2020 WL 3415630, at *3 (E.D. Wis. June 22, 2020) (summarizing the state of the law). But in *Smith v. Sangamon Cty. Sheriff's Dept.*, 715 F.3d 188, 191 (7th Cir. 2013), the court of appeals treated a plaintiff on a parole hold as a pretrial detainee without directly addressing the issue. For the purposes of this summary judgment opinion I will consider Bennett's constitutional claims under the Fourteenth Amendment "objectively unreasonable" standard that is easier for a plaintiff to meet.

As for Bennett's state-law claims, Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis. 2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161–62 (1988). Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001). Thus, to establish a prima facie medical negligence claim, a plaintiff must show that the defendants failed to use the required degree of skill exercised by an average medical professional in the defendant's field, that the plaintiff was harmed, and that there is a causal connection between the defendants' failure and the plaintiff's harm. Wis. JI–Civil 1023.

Even under the more favorable Fourteenth Amendment standard, Bennett fails to provide facts showing that a reasonable jury could rule in his favor, so I will grant summary

judgment to the individual defendants on those claims. For the same reasons, I will grant summary judgment to the individual defendants on Bennett's medical negligence claims.

Bennett conclusorily states that he received "no" treatment for nine months after his injury, and he contends that the x-rays he received after his transfer to another jail prove that he broke his ankle in the fall. Bennett is mistaken about the scope of this case—it isn't about the whole nine months of treatment at the jail. In his complaint he alleged that the individual defendant nurses failed to give him "emergency" treatment immediately after his July 4, 2020 fall, and that Syed delayed three weeks in getting him an ankle brace, which Bennett says even then turned out to be an inadequate brace.

But at summary judgment, Bennett fails to provide evidence supporting his claims. It is undisputed that much of the medical care he received in the days following each of his falls was performed by jail medical staff who are not defendants in this case. And in any event, non-defendant staff responded to his first fall within several hours of his health request for that fall. A nurse examined him and noted only mild symptoms, and the on-call physician (neither side explains whether this was defendant Syed) telling the nurse to provide Bennett with Tylenol, ice, and range-of-motion exercises. A non-defendant nurse examined him again two days later and gave him more Tylenol. At summary judgment, Bennett concedes that he received this treatment, which directly contradicts his allegations that he did not receive immediate treatment. Bennett suggests that he did not immediately receive Tylenol after his first nursing visit, but even if he did not, there is no indication that delay in the provision of pain medication was the fault of any of the named defendants.

Bennett states that defendants misdiagnosed him with a sprain, when he had actually suffered a fracture, as indicated by the April 2021 radiology report—nine months after his

10

falls—diagnosing him with an "age indeterminate fracture." The individual defendants argue that this is insufficient to raise the possibility that the facture occurred on July 4 above mere speculation. *See, e.g.*, *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)). But even assuming that there is enough evidence for a jury to reasonably infer that the fracture was caused by the July 4 fall, Bennett doesn't explain how defendants' treatment decisions immediately after the falls violated his rights under the Fourteenth Amendment or Wisconsin negligence law.

By the time that Bennett first met with Dr. Syed (four days after the injury) and Nurse Bailey (six days after), the medical notes already indicated that Bennett had only slight bruising and swelling, and that his limp went away when he though no one was watching him. Syed also noted no edema, redness, or swelling and that Bennett had full range of motion, so he diagnosed him with a sprain. Both Syed and Bailey told him to take ibuprofen and elevate his ankle, treatments consistent with the standard for treating ankle sprains. Bennett does not provide any evidence suggesting that the standard of care for the relatively mild symptoms he showed was to be x-rayed immediately. Then, three days later, after Bennett had been seen a few more times by other nurses, Bailey re-examined Bennett and noted a hematoma on his foot, she sought and received approval for an x-ray. The only inference a jury could make from this decision is that Bailey reasonably sought further evaluation because of Bennett's worsening symptoms. That x-ray did not show a fracture, so defendants and other medical staff continued to treat the injury as a sprain. I did not grant Bennett leave to proceed on claims regarding his

long-term treatment at the jail, but even if I had, there isn't any evidence that defendants unreasonably treated him given the contemporaneous x-ray showing no fracture.

Bennett also brings claims against Nurses Kim and Wiersma. But there isn't a record of a Nurse Kim involved in Bennett's medical treatment. Bennett doesn't present any evidence that Nurse Wiersma directly provided him medical treatment immediately after his falls, which is the time relevant to his claims. Wiersma did deny grievances that Bennett filed the day of his first fall and shortly thereafter, but not in a way that negatively affected his care. *See* Dkt. 64-4, at 4–6. She reiterated the regimen of treatment that Bennett had already been prescribed, noted that he had pending medical appointments, and concluded that it was appropriate for his complaints to be handled through medical requests, not grievances. There was nothing unreasonable or negligent about Wiersma telling Bennett to route his concerns directly to the medical unit.

That leaves Bennett's Fourteenth Amendment and medical negligence claims against defendant Syed specifically about his delay in giving him a knee brace. The evidence here shows that at their July 8 meeting, Syed initially ordered Bennett a knee brace but then rescinded that order after being told that there wasn't one in stock and that a new one would have to be ordered. Bennett eventually received a compression sleeve that fit him about three weeks after his first fall, after he had increased swelling.

Bennett argues that Syed "lied" by initially giving him a brace but then rescinding the order for it and saying that the initial order was just to "keep him quiet." But there isn't a reasonable inference that Syed rescinded the order for an improper reason. And Bennett does not otherwise explain how Syed changing his mind about the brace could support a Fourteenth Amendment or negligence claim, particularly given the other types of treatment Syed ordered

(ibuprofen and elevating the ankle) and given that Syed was informed that the jail didn't have a brace that would fit Bennett—meaning even if Syed ordered one, Syed knew that Bennett wouldn't have been able to immediately benefit from it. Defendants state that braces are used for serious sprains, and that they did not consider Bennett to have suffered that serious of a sprain. Even when another doctor ordered Bennett a "compression brace" about a week later, it was prescribed for his comfort instead of out of medical necessity, so that order doesn't contradict Syed's assessment.

I take Bennett to be arguing that his perceived mistreatment stemmed from Syed's misdiagnosis of the fracture as a sprain, and Bennett expresses dissatisfaction that Syed was not able to evaluate him the ordinary way, instead visually assessing him through glass partitions because of COVID-19 precautions. But Bennett does not show that Syed acted objectively unreasonably given the circumstances known to him at the time. I have already concluded that Bennett fails to show that defendants acted unreasonably by failing to get him an x-ray immediately for what at first appeared to be only a mild sprain. And Bennett does not submit evidence showing that a visual examination rather than hands-on exam was unreasonable given COVID-19 concerns or even showing that Syed had a choice to breach the COVID-19 protocols. Because no jury could conclude that Syed acted objectively unreasonably or negligently, I will grant the individual defendants summary judgment on Bennett's claims against Syed.

ORDER

IT IS ORDERED that:

1. Plaintiff Nicholas Bennett's motion to amend the summary judgment record, Dkt. 148, is GRANTED.

2. Defendants' motions for summary judgment, Dkt. 90 and Dkt. 100, are GRANTED.

3. The clerk of court is directed to enter judgment accordingly and close the case.

4. Defendant Dane County may have until May 26, 2022, to submit the video footage discussed in the court's May 5, 2022 order.

Entered May 13, 2022.

                                      BY THE COURT:

                                      /s/

                                      _____

                                      JAMES D. PETERSON
                                      District Judge